Hear ye, hear ye, hear ye. The United States Court of Appeals for the 11th Circuit is now open according to law. God save the United States and this honorable court. Good morning and welcome to the 11th Circuit for this week's session out of Montgomery, Alabama. Judge Luck and Judge Brasher and I very much regret that we weren't able to be there with you in person this week and we appreciate your cooperation in having this session by Zoom today. If we experience any technical difficulties during the arguments, please be patient and our information technology group will take care of the problem but rest assured that we will make sure that you get to have your entire argument either way. You should see on your screen, for those of you familiar, the timer. It's displaying how much time you have remaining in your argument. When you have two minutes left, the numbers will turn yellow and it turns red. Your time has expired and we ask you to quickly conclude your remarks. Council, before we begin arguments, please be advised that we've read your briefs and we're familiar with your arguments so we would encourage you to go directly to the heart of your arguments. All right, I'm going to call the first case, number 19-11669, United States v. Bruce Nicholson. Mr. Lloyd, I see that you've reserved five minutes for rebuttal. You may begin when you're ready. Thank you, your honor. May it please the court. My name is J.D. Lloyd and I represent Bruce Nicholson, the appellant in this matter. Today, I will be focusing my time on how this court should reverse the district court's denial of Mr. Nicholson's motion to suppress evidence seized in Kentucky. The district court erred in denying Mr. Nicholson's motion to suppress unlawfully seized evidence in Kentucky on two grounds. First, Mr. Nicholson did not abandon his green camera, which was among the rest of his belongings at the record service. Second, while the district court correctly found that the warrantless seizure of the belongings in Kentucky was unconstitutional, the court erred when it refused to suppress the evidence on the grounds that suppression wasn't warranted under the exclusionary rule for Herring v. United States. With respects to standing, the district court's conclusion that Mr. Nicholson abandoned this camera cannot find support in the statements included in his pleadings and cannot be reconciled with the evidence demonstrating his attempts to regain possession of the camera and the rest of his belongings in Kentucky. In the context of standing and abandonment, this court takes an objective common sense approach to see whether the defendant voluntarily discarded, left behind, or otherwise relinquished his interest in the property in question. Counsel, this really wasn't an abandonment issue. I know you frame it that way. It's really an ownership issue, right? The district court found that your client didn't own the camera, correct? Well, the district court concluded that Mr. Nicholson had repeatedly disclaimed ownership in the camera, which we would contend is simply not the case. Let me ask you this. Is that a fact finding? Is ownership of your client, subjective ownership of your client, a fact finding? Yes, sir. We would say that it is, and we believe that the court clearly erred in reaching that factual finding. As I understand it, the motion that was filed on behalf of your client specifically stated or distinguished between items that were in, the two victims that were in their possession, and that camera then was placed into the belongings or the purported belongings in the boxes of things that belong to your client. Is that a fair reading of the motion to suppress? With respect, your honor, we believe that counsel basically classified this camera as being in the girl's possession or at no point did he flat out say one of the girl's cameras or the camera belonging. I mean, but we're talking about a fair reading here, and as I understand it, the way that the sentence reads or one of the ones the district court relied on said that there were belongings of the victims, the camera was found in their possession, and it was taken from the victims and then put in the purported belongings of the defendant. Is that not a fair reading of that, that the camera was one of the belongings of the victims in the case that got inadvertently placed into the belongings of the defendant? Well, we don't believe so, your honor. We believe that that statement's being twisted to clearly establish ownership for the girls on behalf of girls, but we don't believe that that was the point of what counsel pleaded. Perhaps he could have been more artful in the way that he described the camera and where it was located, but again, we believe that this was a description of possession temporarily at the time of the police interdiction and the seizure of everything that was found within the cab of the truck. On clear error review though, is it not at least a reasonable interpretation or reading of that sentence that the camera and others in the motion that the camera belonged to the victims in the case? I don't believe that it's worthy of precedent in the area of abandonment. It's fairly clear that abandonment needs to be unequivocal. In our brief, we cite parole, co-field, and again, that's sort of why I began my question distinguishing between abandonment and ownership because we're not, this isn't an abandonment situation. No one's saying that your client owned it and then abandoned it. What the district court found is your client disclaimed, subjectively disclaimed ownership at all, ever. Well, if we're going to look at what still remains, is there, did the defendant demonstrate reasonable expectation of privacy in the objects in question here? And we believe that he did. The record shows that he tried to get all his stuff back from Kentucky, but was thwarted when the record service employee said, look, Kentucky State Police has put a hold on this. We can't relinquish this. Well, those are the things that he did, at least purportedly believed to be his belongings. But let me ask you this as the district court did here. What are we balancing the harm as? Is it the harm that this company misinterpreted or misapplied the instruction of the Kentucky police to hold on to this for a few days? Is that the harm that, in other words, that this company got more aggressive than they were instructed to do? Is that the harm that we're trying to deter? Well, the harm we're trying to deter is multifaceted. First, it's the denial of Mr. Nicholson's interest in the items at hand. The record indicated that there was a ton of stuff left behind in Kentucky as part of the seizure. But in hearing and doing an exclusionary rule analysis, we have to look at the deterrence of police conduct as well. And here we think that there is ample justification for deterrence in the police's action here. Well, the district court, as I understand it, found based on the testimony of the towing company that the towing company was told by the Kentucky State Police to hold on to it for a few days and the FBI would be there or would take care of it. That's as I understand the testimony. And then what happened is months later when your client sought to get it, there seems to be some dispute about this, but it was told that the state police had told him to put a hold on it for the FBI. Yes. If we're deterring the illegal conduct here, and that is the few days to hold on to it by the state police, how is there deterrent effect to the misinterpretation of that instruction by the towing company? How does that further any sort of Fourth Amendment interest that a private entity misunderstood instructions from the state police here? Well, Your Honor, we think that the facts, the facts unfortunately in this case are very unclear as to what happened between arrest in July of 2012 and then ultimately once that warrant was issued six months later in January. But what we do know is that Agent Harris suspected that there had been sex crimes committed against these girls. Now the arrest warrants had nothing to do with allegations of a sex crime or whatnot. It was a federal fugitive from justice warrant and a state interference of custody warrant. But on June, on July 16th, Agent Harris had a suspicion that sex crimes had been committed. On August 2nd, those suspicions were confirmed when they interviewed J.F. and she told officials that Mr. Nicholson had taken nude and semi nude photos of her and K.M. and stored them on the computer, a computer that was left in North Carolina, a computer that was in New York, and then a green camera had been involved. So a mere 16, 17 days after the arrest, Agent Harris should have known that there could possibly be evidence anywhere Mr. Nicholson and the girls had been of sex crime. Counsel, he certainly waited a long time to get the warrant, but if we're evaluating, I guess my question is, in evaluating conduct that needs to be deterred, which is what we need to do on a balancing test, on the herring balancing test here, it seems to me that the wrongful conduct here was the private entity, the towing company, telling your client when he called, we were told to hold onto this for the FBI, when in fact that wasn't true. All that they were told according to the state police was hold onto it for a few days and the FBI will be there. A few days had long expired by then. So how do we, how is deterring a private entity misinterpreting instructions, furthering any sort of Fourth Amendment interest for purposes of the balancing? Well, we would argue that law enforcement doesn't deserve the benefit of a deferential analysis or a deferential conclusion that the tow service was wrong. The district court below certainly concluded that a hold had in fact been placed on police. Now whether or not Agent Harris realized that it happened is an investigative problem and an investigative failure more than likely, more than anything. We don't believe that Mr. Nicholson should bear the brunt of law enforcement's failure in that respect. Can I ask you, before we conclude, can I ask you one last question to address? So let's assume you're right. Let's assume that the balancing test is in your client's favor. Is there not, looking at Chapman harmless error for a Fourth Amendment violation, is this not harmless given the overwhelming amount of evidence that having nothing to do with Kentucky from the New York computer on the child porn from what was found on Cam's phone regarding the naked picture and regarding all the other evidence not having to do with the warrant that there was travel with the intent to have sex or sexual conduct. How do we not conclude that the evidence doesn't seem to be overwhelming with regard to the other evidence that was introduced? Well, yes, John. Well, first of all, some of the images taken off camera were ultimately used in support of count for the indictment. They form part of the substantive charge account for the indictment. Additionally, when we're talking about the traveling and transportation charge, and I see my time is about to expire. May I conclude this thought briefly? Judge Prior, is that okay? In dealing with the transportation and traveling charge, the other evidence of the sex toys and condoms and whatnot recovered from the car or the cab of the truck certainly would be used as evidence against Mr. Nicholson and his intent to commit the crimes against J.F. and K.M. moving forward. Thank you, Your Honor. Thank you, counsel. Make sure you have your full time for rebuttal. Mr. Billingsley. I'm sorry for the delay. I was trying to unmute. Good morning. May it please the court. Michael Billingsley from the United States. I'm going to turn first to the camera issue about the whether he just disavowed ownership possession of the camera. I think it's clear that he did. I think, Judge, you're right. It's a clear air review of the reading of the pleading. And I that search, the two alleged victims in this matter were allowed to leave with their belongings. However, a camera that was in their possession was taken from their possession and placed among the belongings of Mr. Nicholson. Really, I think you let me let me ask you this, Mr. Billingsley, aside from the statement, any statements in the pleadings, what is the evidence that supports that he either did not own the items, the item or that he abandoned the item? I don't know that there's any other outside of the pleadings, Your Honor. I mean, but I think the district court based its decision on the pleadings. And, you know, you can't simply say this is not mine, it's someone else's and then assert a Fourth Amendment interest in that. Have you found any other case in which ownership in an item or abandonment was found based solely on statements and pleadings? I have not, Your Honor. I think the ones I cited that the defendant said at the time are out of their own mouth. So I don't think I have found that. But certainly, you know, attorneys represent their clients positions all the time. Presumably this attorney was asserting this based upon what he was told by his client. Does it matter? Does it matter here that the the the person is saying that his children, I mean, one of one of which is a stepdaughter and the other, which I think is his actual daughter, who are both minors, owned the camera? I mean, I guess the reason I ask that is I view all of my child's possessions as my possessions. I wouldn't sort of be able to I wouldn't think I could sort of disclaim ownership in something that was in my house simply because it was in my child's room, for example. Does that matter at all? Well, I think that, you know, certainly if you have something that's in your child, like let's say this was a backpack that belonged to the child or my child's backpack that they take to and from school every day. I may own that in a sense, but I don't have a privacy interest because I don't have any control over it. I can assert privacy. I guess it's in your car, though. I mean, that's that's where the ownership versus the abandonment issue is sort of strange to me. I mean, if I have my son's backpack in my car when the police sees my say, well, look, that's my son's backpack. Just by saying that that's my son's backpack, I don't seem to be disclaiming a privacy interest in it. It's in my car. It's with my stuff. It's my son. That just seems very odd to me. Well, if it's something that he has complete control over, then, you know, he takes does whatever with it. Then it seems like you can't say that you have a privacy interest when you don't know what that child is doing with it. I mean, I don't I don't think I may have ownership of my child's phone, but I don't think I have a privacy interest. I can assert a privacy interest on my child's behalf, but my own privacy interest. I mean, he's trying to assert a privacy interest as to himself, not as to the children. The other thing I would say is that one of these children were not the older one was not his child. He doesn't make a distinction between the younger and the older in terms of this pleading in terms of what he says about who it belonged to. He didn't make the argument that I'm asserting it on behalf of or I mean that because the younger child had it, that it was in my possession or I owned it. In fact, he was being prosecuted for custodial interference with the person who did, who was his parent. Correct? That's exactly right, Judge Luck. I mean, so, so, you know, to the extent that it was in the possession of the 16 year old, the argument that you're making or the question you're asking Judge Brasher wouldn't apply as to that particular victim. And again, he doesn't distinguish between which one he's saying had possession and control of the camera. Let me, let me ask you a hypothetical. Let's suppose you had two roommates in a house and the house is owned by one of the roommates and the defendant described the house as Michael's house. Would that mean that he had no privacy interest in the items in the house? No, I think the, the, well, let me make a distinction here because we're talking about the initial seizure of the camera or search of the truck. There's no constitutional issue with that. And so you're talking about, again, we're talking about a particular item. So if I was to say, you know, my house, I have a privacy interest in the overall contents of my house, but if something was taken constitutionally out of that house and I said, well, I don't know anything about that, that's not mine. Then I think I would be disclaiming any privacy interest in that item. And so that's what we're talking about here. There's no issue with them initially seizing the camera. There's no constitutional question there. It's then when they get it and they, you know, they're going to search the contents of it. That's when he's saying this belonged to the girls. It was erroneously placed with my stuff. I don't have control or possession over it. And at the same time, trying to say that I wanted to assert a fourth amendment interest in that camera. Who are we trying to deter? May I ask one more question? If we were to agree with Mr. Lloyd that Mr. Nicholson either did not abandon or maintained ownership of the camera, what would we do? Would we remand to the district court at that point? What would be the remedy if there is one? Well, I think the issue then would become whether the, you'd go to the hearing analysis because you'd be talking about whether suppression was warranted. I mean, certainly again, there's a distinction to be made here between the items that were taken from the truck other than the camera, right? Because again, there's no issue that all those items were properly taken out of the truck. There's no constitutional question that they were, when he was arrested, they were constitutionally permitted to take the items out of the truck. So it's only the camera that becomes separately an issue because the search of the camera did not occur until later. So the camera would essentially take the same status as the other items that were in the truck. Well, I think we're taking a different status in that the other items that, you know, we're talking about, if you're talking about whether they should have been suppressed, you're talking about the actual physical items. Again, you could have a witness testify that this was taken out of the truck, right? All of these items, you could testify to that because there was nothing unconstitutional about the initial search of the truck. So the camera has to be a little bit, looked at a little bit differently because you could say there was a camera, but what we're talking about is what was on the camera, which was searched after this whole question comes up. Let me ask you a question about the herring issue. So the herring case is a good faith exception case. I mean, that's what that is. How do you view herring? I mean, it seems like there's some argument in your brief that herring creates this case by case balancing test for the exclusionary rule, but I haven't found any authority for any court anywhere that says that. Where is the court that has said that it's a case by case analysis of the interest behind the exclusionary rule? Well, I don't know that, you know, that's a good question, Your Honor, that I can point you to a case. I mean, the way that I've thought of it is that you're looking at suppression, as the court said, is not. So I mean, that's I guess we would have to say that we would be like the first court in history to say that the exclusionary rule works on a case by case evaluation of the importance of the evidence versus the deterrence effect of the exclusionary rule in this particular case, and not as sort of like a general rule that applies to certain circumstances. I mean, we don't know if, of course, honestly, Your Honor, I haven't looked to see, but I think herring itself talks about that you do this balancing test. I mean, it talks about the exclusionary rules about deterrence, and if there's nothing to deter, then. Yeah, but in that case, the government asserted the good faith exception to the exclusionary rule and pointed to a, they thought they had an arrest warrant, they were relying on that arrest warrant, and it turns out the arrest warrant was invalid and didn't exist. So that's your standard good faith exception to the exclusionary rule. I guess where has, I just can't find any authority anywhere that has suggested that you do on a case by case analysis, sort of the specific facts of a specific case, you look at whether there would be a deterrent effect in applying the exclusionary rule. Well, I think that the court talks about the societal cost, and whether it's a good faith analysis or it's a balancing test. Here, the officers, I mean, basically we're talking about, as Judge Lux said, a miscommunication. So the deterrent value here, as the district court found, is minimal, if non-existent. And, you know, the court does talk about the cost of excluding evidence being significant. You know, you're potentially letting dangerous criminals go free. Yeah, and that's another question I have about, I mean, I gotta say, I was just, I don't know, it was kind of shocking to me, frankly, what the district court said. Because the district court said, this is an important case and a serious crime, therefore the exclusionary rule doesn't apply. And I did capital murder cases before I got this job, which were very important cases and very serious crimes. And I was always under the impression that the exclusionary rule applied when there was a Fourth Amendment violation, regardless of how serious the about the district court's analysis on that. Well, what I would say, Your Honor, is you don't have to reach that question, because we think that based upon the conduct that we're seeking to deter, and getting back to what Judge Lux was asking about, it wouldn't matter what kind of cases it was. The exclusionary rule would not be appropriate to apply in this case. So you're, I mean, I just want to make it clear, I mean, you agree with me that there is no serious crime exception to the exclusionary rule. Well, I mean, that again, the court talks about the potential of letting dangerous criminals go free. Okay. I don't know other than. I think, it sounds like you disagree with me. And if that's the case, tell me a case, give me some authority that identifies a serious crime exception to the exclusionary rule. I can't give you that case. All I can point to is the, what the court has identified as the cost. And certainly there's, you know, barely a more dangerous criminal than somebody. Then explain to me how this balancing test in Is it the deterrence effect on one hand and how serious the crime is on the other? Is that the way we would do it? So if the police officers, if they don't intentionally violate the Fourth Amendment, and it's a really serious crime, then the evidence comes in. But if the police officers do intentionally violate the Fourth Amendment on the one hand, and it's like not a very serious crime, then the evidence goes out. Is that the way we would do it? Your Honor, let me say this. I am, my position is you don't need to reach that question. And I just don't want to say definitively, it would never come into play. But I don't think it needs to come into play in this case. And I don't know if that's answered satisfactory to you. But I don't think you have to answer the question in this case. Because again, I think regardless of what type of crime this was, based upon the nature of the conduct that we would be seeking to deter, that suppression was not appropriate. But then let me let me make the distinction again with the camera. So if the court agrees that there was not standing on the camera, so what we're talking about then is physical exhibits, the other items. And again, there's nothing that would prevent a witness from testifying. In fact, that I think the towing, the employee testified that what he found in the truck were items of a sexual nature. I don't know they got any more detailed than that. But again, what was found in the truck, a description of them would not there would be no basis to suppress that because that was there was nothing unconstitutional about taking the items out of the truck. And that might go to whether a suppression issue or it could go to a harmless error analysis. And to get to the harmless error analysis before I get out, before I run out of time. Clearly, I think that the evidence in this case, if you did suppress the evidence of the Kentucky search warrant, any error would be harmless. Because of the evidence that came in, I mean, you have these two victims that corroborated each other, but the testimony that they gave about what was going on is this defendant abused these girls from the time they were six or seven years old up until the time he was arrested, which is, you know, five, six years for one more for the other. And we know, I mean, the most obvious evidence to point to in this case, this was occurring is the fact that he fathered a child with one of the victims. And there's no dispute about that. There's no disputing that at all. And so we think there's, there's one, one, I think, I mean, I think that's a good point, but there are so many counts in this, in this case. And it seems like the appellant is arguing that, well, for some of the counts, this evidence was really important, right? What do you say about that? So for some of the counts, it's kind of irrelevant, really. I mean, like you just said, but for some of the counts it's important. So for example, the count about taking the one, taking the man's own child, I believe JF, maybe that's the initials, right? Taking her across state lines for moral purposes, maybe the sex toys and the camera, the photograph, maybe that's really important for those counts. What do you say about that? I just disagree that they were, would make a difference in the outcome because again, you had the victim's testimony that corroborated each other, that this had been going on and on. And so the fact that there were sex toys, I mean, you had the one other thing I didn't mention because early in the trial, the victim's aunt testified that when she went to get them initially when they were younger, there were all these, there was lingerie, high heels, and the girl said that they belonged to them. So I just think the entire record, it wouldn't affect any of those counts in terms of the validity of the convictions. If there are no further questions, the United States would just ask that you affirm the convictions and sentences of Mr. Nicholson. Thank you. Mr. Lloyd, rebuttal. Apologies. Thank you, Your Honor. Just kind of starting where y'all left off here in talking about Chapman and harmless error, we would direct the court to consider counts two and three that dealt with JF, the victim JF, the transporting and traveling charges. When we're talking about the non-camera evidence recovered from Kentucky, again, as I stated earlier, this evidence could certainly be used and was used by the government to form a foundation of intent for the jury as respects to count two and three. Counsel, the entire argument for excluding them was that those were irrelevant because they were from 2007. In fact, the district court said that the relevancy was attenuated because the conduct here happened in 2012 and those pictures were from 2007. And so when we're talking about intent in 2012, it's pretty weak to suggest that pictures from 2007 bear on that. So I'm having trouble understanding why those pictures on the camera impacted one way or another when A, they were excluded and B, to the extent that they were considered at all, it was duplicative and pretty weak of intent on what happened in 2012. Your Honor, I apologize. I was referring to the condoms. I'm sorry, but in looking at that evidence and how that influences intent, that's what, that's what I'm sorry. I was, perhaps I wasn't clear that talking about the sex toys and the condoms. Regarding intent, if we're talking about the sex, or so taking out the sex toys from all this, the testimony as I understand it was that JF testified that as recently as one month before that they left for Florida, she was molested by her father in a way that would certainly be a sex conduct or sex act under federal law that was corroborated by KM. The testimony from KM was that she was encouraged to get JF to be more open to having sex acts. There was pornography that was not excluded found in New York and it was testified that that pornography was used to show the young girls how they wanted to perform on the defendant. And, and the fact that KM was pregnant and show that sex acts in fact had occurred. How is that not overwhelming evidence of intent absent even the, the sex toys and what was found on a Kentucky camera? Well, what we would contend is especially with counts two and three, JF unequivocally testified that nothing happened between Mr. Nicholson and her. Mr. Nicholson did not sexually abuse her while they were on the road. And of course that was a question for the jury to ask whether or not. Without a doubt that the jury could infer from that, that there was an intent, but the question is simply, was there sufficient evidence absent this such that a jury beyond a reasonable doubt could find or would find that there was intent. And I guess my question is, we have cases, legions of cases saying that the actual sex act is not relevant. What's relevant is the intent. How can we have testimony of five years worth of molestation that was corroborated both by testimony and by physical evidence? Um, uh, not, not overwhelming evidence of intent to engage in sex act at some point during this trip. Well, specifically with count to count two is tied to sex acts that could have occurred in Florida or North Carolina and nothing happened in Florida or North Carolina. And there was no evidence that the parties were going to return to those two States. So you're left with this situation where JF unequivocally testified that Nicholson didn't abuse her under Florida law or North Carolina law. And there was no way that this government can make a prima facie case under count to, if this, if this evidence was to be believed by the jury and if there were a lot rational jury would have found that. Um, and again, though, counsel isn't, isn't the question intent. In other words, if, if we had text messages, for example, which said, I intend to rape you in the same way that I have been raping you for the last five years. And for whatever reason that act could not, or did not happen because it was interrupted or there's something happened. Would that not be sufficient evidence even absent the sex act? Well, your honor, of course, in that situation, that would be, but in our case here, especially with count two, we have under your hypothetical, I'm going to rape you in Florida or North Carolina, but he didn't rape her in North Carolina or Florida. And there was no evidence that they were going to return. It was hypothetical that I gave you, right? Non-consummation does not affect it, but that's not the only factor that's going on here. It's the specifics of the pleading. It's the specifics of JS on a, you know, unequivocal testimony. So can I ask you, can I ask you to respond to something that Mr. Billinsley said? He, he said, um, that look, the, the sex toys, the condoms and stuff like that, even if that physically would not have come in, you know, let's, let's assume that that was suppressed because of the search people, you know, that testimony about that still would have come in, right? The, the victim still would have testified that those existed, that they traveled with that. Um, what do you say about that? Uh, just for, I see my time's expired. May I respond to judge Brasher's question? Yes, you may. I would say that that evidence is the physical evidence is powerful. Um, in sex cases, you often have one word versus another. He said, she said case. And here you had powerful visual evidence that a jury could see, um, that would come in and influence their way of weighing these allocations. Uh, I mean, KM testified that I believe that the sex toy presented was one that Mr. Nicholson used on her and that's powerful evidence that wouldn't have been available had it been suppressed. And importantly, counts one and two are life sentences. If Mr. Nicholson's prevail on one or two of those, he's left with 360 month sentences as opposed to dying in prison now. And with that, we ask that you reverse Mr. Nicholson's conviction based on these failures. Thank you, Mr. Lloyd. Thank you to both counsel for your well-prepared, excellent arguments. Mr. Lloyd, I know that you were court appointed and the court very much appreciate your able service. Thank you, your honor.